37  143
37  222

[No. 4885.  Decided February 21, 1905.]

EVERETT WATER COMPANY, *Respondent*, v. R. W. POWERS
et al., *Appellants*.[1]

WATERS—DIVERSION OF—RIGHT OF WAY—DEED—GRANT—LI-
CENSE.  An instrument executed as a deed purporting to grant
and convey a right of way for a water pipe line, and also the right
to divert the flow of water in a certain creek, operates as a grant
as in the case of land itself, and is not a license, terminable at
will.

SAME—DEED—CERTAINTY—TIME LIMIT FOR DIVERSION.  Such a
deed is not void for uncertainty in that it fails to fix any time
limitation for the diversion of the water, but will be construed as
unlimited as to time.

SAME—CERTAINTY AS TO LOCATION.  Such a deed is not void for
uncertainty in failing to locate the right of way, where entry on
the tracts described was made, and a route selected and marked
out, and work commenced with the intention of using the strip.

SAME—CERTAINTY AS TO AMOUNT OF WATER.  Such a deed is not
void for uncertainty as to the amount of water to be diverted
where the grant covers all the water except an express reserva-
tion for all that one family may need for domestic purposes on a
certain forty-acre tract, and in case of fire to the extent of service
through a three-inch pipe.

SAME—CERTAINTY AS TO RESERVATIONS OF WATER.  Such a deed
is not void for uncertainty as to how the reserved water was to
be taken, since no pipe being specified except for fire, it follows
that water for domestic purposes was to be taken from the bed of
the stream.

SAME—CERTAINTY AS TO WIDTH OF RIGHT OF WAY.  Such a deed
is not void for uncertainty in failing to specify the width of the
right of way, since in such case the width would be only such
as shall be reasonably necessary.

SAME—DEED NOT AFFECTED BY RIGHTS OF LOWER RIPARIAN OWN-
ERS.  A deed of the right to divert the waters of a stream cannot
be objected to by successors in interest of the grantor because of
the fact that the rights of lower riparian owners had not been
acquired.

[1]Reported in 79 Pac. 617.

SAME—FRAUD IN PROCURING DEED—PURPOSES FOR WHICH WATER
IS TO BE USED. A deed of the right to divert water from a stream
for "water purposes at the town of L," is not void for fraud in
that it was intended to use the same for a new city to be founded
in the vicinity, the name of which was not then determined, where
it appears that such intention was made known to the grantor,
that the vicinity was known as L, then the nearest postoffice, and
water is to be supplied to what is still called L.

SAME—SPECIFYING PURPOSE—SURPLUS. Where a deed grants all
the water of a stream, except certain reservations, specifying that
the diversion was for "water purposes at the town of L," without
any words of prohibition against the use of water for other pur-
poses, the grantee is entitled to use the surplus water, after sup-
plying the town of L, for supplying another city.

SAME—ABANDONMENT OF RIGHT OF WATER—NON-USER—PRIOR
LEASE—LIMITATION OF ACTIONS—WHEN COMMENCES TO RUN.
Where the owner of the fee grants a right of way for a pipe line
across lands subject to a prior lease, and the lessee enjoins any
use thereof, the statute of limitations against the grantee upon a
non-user of the right of way does not begin to run until the expi-
ration of the lease, and, where only six years had elapsed since
that time, the right to use the right of way was not abandoned or
lost by non-user; since no non-user for any length of time short
of the period of the statute of limitations would constitute an
abandonment, when no time is fixed.

SAME—DIVERSION OF WATER—INJUNCTION TO RESTRAIN INTERFER-
ENCE. Injunction is the proper remedy to restrain interference
with the right to divert the waters of a stream and to use a pipe
line right of way, granted to the plaintiff by the predecessors in
interest of the defendants, who deny the plaintiff's right and
threaten interference with the enjoyment thereof.

SAME—INJUNCTION PENDING CONDEMNATION PROCEEDINGS. In an
action to enjoin a land owner from interfering with a water com-
pany's use of a right of way for a pipe line to supply the inhabi-
tants of a city with water, where it appears that a portion of the
route departs from the company's granted right of way, it is
proper to grant an injunction as to such new part of the route for
thirty days to enable the company to institute condemnation pro-
ceedings, and to make the same permanent if the proceedings are
diligently prosecuted.

Appeal from a judgment of the superior court for Sno-
homish county, Denney, J., entered January 17, 1903,

upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to enjoin interference with plaintiff's diversion of the waters of a stream.   Affirmed.

*G. S. Judd* and *W. W. Block,* for appellants.

*Brownell & Coleman* and *Francis H. Brownell,* for respondent.

HADLEY, J.—This suit involves a right of way for a water pipe line, over which the respondent company desires to convey water for the use of the inhabitants of the city of Everett, and, also, the right to divert water for that purpose.   The issues and history leading up to the controversy, substantially stated, are as follows:   The complaint avers that, in the year 1891, Henry Hewitt, in behalf of a syndicate of New York capitalists, conceived the plan of establishing a townsite at and near the mouth of the Snohomish river; that in furtherance of the project, in the spring of said year, he purchased five thousand·or more acres of land in that vicinity; that the nearest post-office in the vicinity of the land was Lowell, an unincorporated village, containing at that time approximately one hundred inhabitants; that, among the plans for developing the proposed town, was that of furnishing a water supply, and constructing a water system therefor; that, in looking over the sources of available water supply, said Hewitt deemed it most practicable to utilize the waters of Woods creek, a stream in the vicinity; that, for the purpose of acquiring the waters of said creek, said Hewitt purchased from S. O. Woods certain lands, over which said stream flows and, also, the right to construct the necessary pipe lines, and to divert the waters of the stream for use in said proposed town, which was then generally known as "Lowell;" that said Woods was then the owner in fee

10-37 WASH.

simple of said land, so purchased, and that the same was unincumbered, except by a lease to one Crook; that said purchase was evidenced by a deed, which was duly recorded on May 22, 1891; that thereafter, in the year 1891, said Hewitt proceeded to mark out the right of way for a pipe line, and to construct the necessary dams, ditches, flumes, and other apparatus, for the purpose of diverting said waters, and utilizing them in such water system for the proposed town; that such diversion was at that time enjoined by decree, entered in an action brought by said Crook against said Hewitt, such injunction being based upon the rights of Crook, as lessee aforesaid, the lease antedating the conveyance to Hewitt, and not expiring until the year 1896; that thereupon Hewitt, being thus compelled to cease operations in the matter of procuring said water supply from Woods creek, sought other sources of supply, and proceeded with the construction of a water system to supply the proposed city, which system is now, and for years has been, owned and operated by respondent; that the proposed townsite was eventually platted under the name of the "City of Everett," and that, at the time of bringing this suit, the same was a municipal corporation, containing approximately 18,000 inhabitants; that the aforesaid rights, obtained by said Hewitt from Woods, were by him duly conveyed to, and are now owned by, respondent, a corporation, which has for years been engaged in furnishing the inhabitants of said city and its vicinity with water for general municipal, manufacturing, and domestic purposes; that for years respondent has utilized for its water system other sources of supply than the said Woods creek, but has always retained its rights in said stream with the intention of eventually utilizing it as a source of supply; that it has, from time to time, acquired the rights of riparian proprietors along the stream, below

the intended point of diversion in the tract acquired from Woods; that the growth of the city has been so rapid in the last few years as now makes it necessary to utilize the waters of Woods creek, in addition to other sources of supply, in order to furnish the inhabitants of said city and vicinity with water; that about the 1st of August, 1902, respondent started to complete the works necessary to divert the waters of Woods creek into its general system, but was met by claims of appellants, who assert that, from sources of title with which respondent is unacquainted, they are in possession and control of a portion of the lands purchased by Hewitt from Woods, as aforesaid; that appellants have forbidden respondent to go upon or across said land for the purpose of completing the necessary works to divert the waters, they claiming that respondent has no right thereto, and that they threaten by force to prevent the construction of the pipe line across the land.   An emergency is alleged, and an injunction asked to restrain appellants from in any way interfering with the construction of said works and the diversion of said waters.

Appellants answered the complaint, alleging that they are the owners of eighty acres over which said Woods creek flows, and that the diversion of the waters at the place proposed would greatly damage them; that, during the year 1891, said Hewitt went upon the land now owned by appellants, and marked out a right of way and constructed a ditch through the land for the purpose of diverting the waters of said stream, claiming to do so under and by virtue of the conveyance from Woods, heretofore mentioned; that, shortly thereafter, said Hewitt abandoned said right of way and ditch, and proceeded to construct water works at a point about five miles distant from the Woods creek location, and that such works have ever since been used to supply water to the city of Everett; that, since March,

1892, no attempt has been made to divert and use the waters of Woods creek, until about August 1, 1902, when respondent, claiming as the assignee of the rights of Hewitt, attempted to lay out a new pipe line, which was separate and distinct from the line originally laid out by Hewitt, running through the land on a different route; that when the aforesaid instrument between Woods and Hewitt was executed, it was the intention of the parties that only sufficient water should be diverted from Woods creek to supply the town of Lowell, which then contained about one hundred inhabitants, is now a place of about five hundred people, and is entirely separate and distinct from the city of Everett; that the principal purpose of respondent, in constructing the pipe line across appellant's lands, and in diverting the water of said stream, is to supply the city of Everett with water; that if only such a quantity of water were diverted as would be necessary to supply the town of Lowell, it would not materially damage appellants, but that the diversion to supply the city of Everett will materially damage them, and will render said stream valueless to them; that, at the time this action was commenced, respondent had not acquired the riparian rights below appellants' lands, and that it has no right to divert the waters at any point along or above their lands; that the instrument between Woods and Hewitt is void and of no effect, for the reason that it is indefinite in its description of the right of way, as to its width and location, and as to the amount of water to be diverted; that respondent seeks to perpetrate a fraud upon appellants, in that it is pretending to proceed by virtue of the original conveyance from Woods to Hewitt, which authorized the diversion of water for the use of the town of Lowell, whereas the principal purpose now is to divert water for the use of the city of Everett; that respondent has never acquired any

right to construct a pipe line at said place, or to divert the water by means thereof, for the purpose of supplying the city of Everett; that appellants and their grantors have been in possession of said land under color of title, and have been in the open, notorious, and exclusive possession thereof ever since the 1st day of January, 1892; that neither said Hewitt nor his assignee has ever, since said time, attempted to exercise possession or ownership over said lands or waters, and that, inasmuch as more than ten years have elapsed, the respondent is barred. The more material averments of the answer are denied by the reply.

Under issues, the principal features of which are stated above, the cause was tried by the court without a jury, and resulted in a decree permanently enjoining appellants from interfering with respondent in the construction of the pipe line upon appellants' lands, in so far as the same conforms in its route with the one located by Mr. Hewitt in 1891; and, as to that portion of the line now proposed to be constructed which departs from the original location, appellants are enjoined from interfering for a period of thirty days. The decree further provides that, in the event respondent shall, within said period of thirty days, commence condemnation proceedings for that portion of the right of way which departs from the original, then the injunction shall remain in force pending such proceedings, provided they shall be prosecuted with reasonable diligence. From that decree this appeal was taken.

Without enumerating or discussing in detail the various assignments of error set forth in the brief, we will endeavor to discuss by classification the material principles involved in the case. It is contended that the deed from Woods to Hewitt was not a grant, but was a mere license, terminable at will. The instrument contained all the formalities of a deed; it contained the usual phraseology of a

deed, and was duly acknowledged and recorded as such. No time limit was specified in it, and nothing was said therein as to its being revocable by Woods or his assigns. The instrument recites that the grantors "grant, bargain, sell, convey, and confirm unto the said party of the second part and to his heirs and assigns, a right of way . . . for a water pipe line over, upon and across the following described lands . . . and also the right to divert the flow of water running through Woods creek . . . To have and to hold . . . unto said party of the second part and to his heirs and assigns forever."

In *McCue v. Bellingham Bay Water Co.*, 5 Wash. 156, 31 Pac. 461, this court held that a deed for a right of way similar to this was a grant. In *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425, it was recognized that the right to the use of the water flowing over land is identified with the realty, and may be the subject of sale or lease, like the land itself. See, also, 1 Warvelle, Vendors (1st ed.), § 15, p. 19 *et seq.;* Gould, Waters (3d ed.), § 304. Thus such subject matter as that of the Woods deed, both as to the right of way and diversion of the water, may be granted, as in the case of land itself. The form, execution, and subject matter of the deed being sufficiently comprehensive for a grant, it must have effected that result, unless other objections defeat such purpose.

It is claimed that the instrument is void for uncertainty, in that no time certain is fixed for the execution of the purpose of the grant. It was, however, competent for Woods to make such a conveyance without any time limitations. He could convey an interest in the realty as absolutely as he could convey the whole of it. The right of way and the right to divert the water were a part of the realty itself. By the terms of the deed these were conveyed to the grantee, his heirs and assigns *forever*, sub-

ject to certain specified reservations pertaining to the do-
mestic use of the water by the grantor.    The absence of
specific time limitations must be construed to mean that
no such were intended.

It is next urged that the deed is void for uncertainty as
to the location of the right of way.    It is true, the exact
boundaries are not described in the deed, except as to the
tracts of land over which the pipe line shall run.    Such
was true, also, in the case of *McCue v. Bellingham Bay
Water Co., supra.*    After the execution of the deed grant-
ing a roving right of way, the water company in that case
entered upon the land, selected a strip, and took possession
of it as the right of way.    The court said:

"When it went upon the land described in the deed and
cleared and prepared its right of way, its grant became
fixed and certain    .    .    ."

In the case at bar the pleadings admit, and the evidence
shows, that such a selection and occupation of a right of
way strip took place in 1891.    Not only was the route
marked out and selected, but a ditch was dug upon the
strip, with the intention of using the right of way for the
purposes of the grant.    Under the *McCue* case, the grant
here therefore became fixed and certain as to location.

It is further contended that other uncertainties are fatal
to the validity of the deed, viz: (1) That it is uncertain
as to the amount of water to be diverted.    The grant how-
ever covers all the water of Woods creek, except what is ex-
pressly reserved for domestic use of the grantor, and also
for his use in case of fire, it being required that in the lat-
ter event he shall be served through a three-inch pipe con-
nected with the main pipe line.    (2) That it is uncertain
as to the amount of water Woods reserved.    The reserva-
tion was for all that one family may need for domestic and
household purposes to be used upon a certain forty-acre

tract, and for such amount as the family may need in case
of fire to the extent of the service capacity of a three-inch
pipe. The amount reserved is therefore sufficiently cer-
tain. (3) That it is uncertain as to where Woods was to
get the water, whether from the stream or pipe line. No
specification was made for connecting with the pipe line,
except by the three-inch fire main, which, it is manifest,
was not to be used except in case of fire. It therefore fol-
lows with sufficient certainty that Woods was to get water
for domestic purposes from the bed of the stream upon the
described tract of land where it was to be used. (4) That
it was uncertain as to the width of the right of way. In
such case the way shall be of such width only as shall be
reasonably necessary and convenient for the purpose for
which it was created. "When the right of way is not
bounded in the grant, the law bounds it by the line of rea-
sonable enjoyment." *Grafton v. Moir,* 130 N. Y. 465, 29
N. E. 974, 27 Am. St. 533. We therefore think the deed
was in no way void for uncertainty.

It is argued that the deed was invalid, for the reason
that Hewitt did not acquire the lower riparian rights at
the time he acquired his rights from Woods. It is not rea-
sonable to suppose that all riparian rights could be acquired
at the same moment. It cannot be doubted, however, that
Hewitt did acquire from Woods the rights which were
specified in the deed. It is true, lower proprietors may
complain, if the waters shall be diverted without the ac-
quisition of their rights. But that question in no way
affects the transfer by Woods of the rights which thereto-
fore attached to his land. It is those rights which are in
controversy here. Having transferred certain rights of
his own, he would not, were he here, be in position to say
that the transfer was ineffective because it may interfere
with lower proprietors. Interference with the rights of

lower proprietors is a question to be raised by them, and
not by Woods or by appellants as his successors in interest.

Another question argued is that of alleged fraud in pro-
curing the deed from Woods. As set forth in our state-
ment of the issues, the deed specified that the water was
to be diverted for "water purposes at the town of Lowell."
It is contended that it now develops that the purpose
was to furnish water to the city of Everett, and that such
fact was fraudulently concealed from the grantor. It
sufficiently appears, however, that the grantor was informed
and understood that the grant was sought for the purpose of
procuring water, and a right of way for its transfer, for
use in the new city which the grantee and his associates
proposed should be built in that vicinity. Witnesses testi-
fied at the trial that the village of Lowell contained about
one hundred people, and was unincorporated at the time
the deed was made; that a postoffice was located there,
called by that name; that the election precinct was desig-
nated by the same name, and that the general locality there-
about was commonly called "Lowell." Other witnesses
disputed this. The real name for the proposed city, it ap-
pears, was not actually determined until after the deed
was made, but the grantor knew that it was to be built in
the vicinity of Lowell, and the court found that it was then
generally termed Lowell as that was the nearest postoffice.
The record discloses that respondent intends to supply
water to what is still called Lowell, and we therefore think
that, under all the circumstances surrounding the execu-
tion of the deed, and from facts which appear to have been
well known to the grantor, fraud was not shown.

We must then look to the scope of the grant as it appears
from the deed. The grant was for *all* the waters of Woods
creek except what was reserved as hereinbefore stated.
While it specified that the diversion was for water pur-

poses at the town of Lowell, yet it was not in terms re-
stricted to that purpose   The estate granted being all the
water exclusive of the reservation, what then are the
grantee's rights in that estate, after he has applied so much
thereof as is required to meet the purpose specifically men-
tioned in the grant?   The granting instrument contains
no words of prohibition against the use of the water for
other purposes after the specified purpose has been served.
In the absence of such prohibition,-the grantee is entitled
to use the surplus water for other purposes.

"When the easement is of a certain quantity of water,
the owner is not bound to use it in a particular manner,
though the purpose for which it is used is mentioned in the
grant.   He may use the water in a different manner or at
a different place, or increase the capacity of the machinery
which is propelled by it, without affecting his right, if the
quantity used is not increased and the change does not
prejudice the rights of others.   This rule applies both to
reservations and grants.   If the use of water is granted for
a certain purpose, with a prohibition against certain other
specified uses, the grantee may use it for any purpose not
prohibited."   Gould, Waters (3d ed.), § 320.

See, also, *Iszard v. May's Landing Water Power Co.*, 31
N. J. Eq. 511; *Mayor etc. of Baltimore v. Day*, 89 Md.
551, 43 Atl. 798.   It follows that, after the inhabitants
of Lowell have been served, respondent has the right to
divert the remaining water, not reserved, to the use of the
city of Everett and its inhabitants.

Appellants contend that the right of way was abandoned.
Soon after the deed was made, and in the same year, the
grantee selected a strip for right of way, and began the
construction of a pipe line system.   An outstanding lease,
older than the right of way and water right, was held by
one Crook.   The deed was therefore subject to the lease,
and the lease continued until 1896.   An application by the
lessee to enjoin the continuance of construction work, and

the diversion of the water, was sustained by this court. *Crook v. Hewitt,* 4 Wash. 749, 31 Pac. 28. Nothing further could be done until after the lease expired in 1896. Meantime there was not an abandonment. The evidence shows that there was no such intention. Some of the constructed work was left in place, and material remained upon the ground. Occasional examination was made of a constructed dam, and debris was removed to prevent injury thereto. But it is insisted, further, that the failure to proceed promptly after the lease expired, together with the delay until 1902, amounted to abandonment. This court held, in *McCue v. Water Co., supra,* that where no time is fixed for the occupation and use of a granted right of way, no mere non-user, for any length of time short of the period of the statute of limitations, will defeat the right of grantee to occupy and use it for the purposes of the grant. If the statute of limitations comprehends the running of time against a mere non-user, under a grant of this kind, it in any event did not begin to run until such time as the grantee might have peaceably occupied, which was after the lease expired in 1896. Active user was again attempted about August 1, 1902, and this suit was brought within the same month. A period of six years only having expired, it follows that the limitation period fixed by our statutes for actions pertaining to the possession of lands had not expired.

Appellants urge that injunction is not the proper remedy for respondent; but we think otherwise. It is the successor in interest of all rights under the grant. Appellants have succeeded as riparian owners with notice of the existence of the grant. They deny respondent the privilege of entering upon the land for the purpose of diverting the water. It has already been held, in the case of the lessee, that he could enjoin the diversion because he

held· a superior estate, and had a right to prevent, by in-
junction, the threatened interference with his enjoyment
of it.   Now appellants are threatening to prevent respond-
ent from enjoying its estate, and it would seem that it may
adopt the same remedy as was sustained in the other case.

It will be remembered, from the statement of the case,
that the court refused to grant the injunction as to that
portion of the present proposed right of way which departs
from the route selected and marked out in 1891; but held
that it would restrain appellants as to the new part of the
route for a period of thirty days, and would make the
injunction permanent, if condemnation proceedings should
be instituted by respondent within that time and should
thereafter be prosecuted with reasonable diligence.   The
precedent for such a course was set by this court in *New
Whatcom v. Fairhaven Land Company*, 24 Wash. 493,
64 Pac. 735, 54 L. R. A. 190, which was, also, a case in-
volving the exigencies of a city water supply.   We see no
reason for not approving the same course here.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.