[No. 7630.   Decided March 30, 1909.]

# K. E. KALINOWSKI et al., Respondents, v. ADAM JACOBOWSKI et al., Appellants.[1]

EASEMENTS—GRANT OF RIGHT OF WAY—SECURITY—INTENT. The intent to grant an easement of a right of way is not disproved by the fact that security was taken to insure the faithful defense and maintenance thereof.

SAME—CONTRACT FOR EASEMENT—FORMALITY—CONSTRUCTION. A written contract whereby the grantor, in consideration of two hundred dollars, covenanted to clear and make a road across his own land and that of another, eight feet wide along the east line of the tract, suitable for the grantee to drive over from the grantee's land to a county road, and "to maintain and defend the said right of way," is the grant of an easement or right of way across his own land, and sufficiently definite and certain; no particular form of words being necessary, and his authority as to the land of a third person being immaterial or presumed.

SAME—DESCRIPTION—DEFINITENESS—USE OF WAY. The definiteness of a written grant of a right of way is immaterial after the way has been entered upon and used.

SAME—GRANT—ESSENTIALS—VALIDITY IN EQUITY. A grant of a right of way need not be by deed, but is valid in equity if the consideration has passed between the parties, and the contract has been fully performed.

EQUITY—INJUNCTION—OBSTRUCTION OF EASEMENT—REMEDY AT LAW. Equity will restrain the obstruction of a right of way by fences, as the remedy at law is inadequate.

VENDOR AND PURCHASER—NOTICE OF EASEMENT—RECORDING CONTRACT—VISIBLE USE. The purchaser of real estate is charged with notice of a right of way by open and visible use of the easement although the contract therefor was not recorded.

Appeal from an order of the superior court for King county, Morris, J., entered May 5, 1908, granting a temporary injunction, in an action to require the removal of obstructions placed upon a private right of way. Affirmed.

*S. H. Steele,* for appellants.

*Sayre & Sutherland,* for respondents.

[1] Reported in 100 Pac. 852.

DUNBAR, J.—The plaintiffs commenced this action, praying for an order directing the defendants to remove a fence and other obstructions across an alleged private right of way. The court, after a hearing on affidavits, granted a temporary order against the defendants, among other things directing that these defendants forthwith remove or cause to be removed any fence or other obstructions placed, or caused to be placed, upon or near said alleged right of way by said defendants herein, or either of them, since the 6th day of March, 1908, if said fence or other obstruction prevents or interferes with the use of said alleged right of way by the plaintiffs herein or their lessees. Claim of right of way is based upon the following agreement, which is made an exhibit and part of the complaint in the action:

"This agreement, made and entered into this eleventh day of May, A. D., one thousand nine hundred and seven, by and between Isadore M. Gladding (a single man) of South Park, Washington, party of the first part, and K. E. Gladding (a single woman) of South Park, Washington, Witnesseth: That the said party of the first part in consideration of the covenants and agreements hereinafter made by the party of the second part, hereby covenants that the said first party will clear and make a road suitable to drive over from the K. E. Gladding eight and ½ acres in the northeast quarter of the northwest quarter of section five (5), township 23 range 4, east W. M., King county, Washington, over and across the John Swanson three acre tract adjoining the K. E. Gladding on the west, thence north along the east line over and across the land now owned by Isadore M. Gladding, to the county road, which is also the north line of township 23, range 4 E., King county, Washington. And he further agrees to maintain and defend the said right of way against any one claiming or to claim the said right of way or in any way prevent the free and unobstructed use of it by K. E. Gladding, or her successors or assigns.

"The said roadway or right of way to be eight feet wide on the straight road and of sufficient space to turn the corner with a farm wagon and a team. And the said party of the second part in consideration of the covenants and agreements of the said first party hereto covenants and agrees to and with

said first party that she the second party hereto will pay to Isadore M. Gladding the sum of two hundred ($200) dollars lawful money of the United States cash in hand this day and date first above written, receipt of which is hereby acknowledged.

"And for the true and faithful performance of all and several the covenants and agreements mentioned the first party herewith pledges all his right, title and interest to any and all property and lands owned by him, to insure the faithful defense and maintenance of the above described right of way.

"In witness whereof, the said parties have hereunto set their hands and seals, the day and year first above written.

"Isadore M. Gladding,
"K. E. Gladding."

It is alleged that defendants, claiming to be the owners of the land through which the right of way was granted, have built a fence across such right of way and otherwise obstructed said right of way, etc. The answer denied the execution of the right of way to the plaintiffs, and the deeding of the property to them; and alleged affirmatively that, at the time of the execution and delivery of the deed to defendants, they had no knowledge or information of the existence of the pretended contract set out in exhibit A attached to the plaintiff's complaint; that said contract had not been filed or recorded in the office of the county auditor of King county at the time of, or prior to, the purchase of the property affected, and that the defendants' deeds to said land were filed for record and recorded prior to the filing and recording of exhibit A. From a judgment of the court granting the injunction, this appeal is taken.

It is assigned that the court erred in holding the right of way contract to be a deed or easement, and it is insisted that the right of way contract does not grant an easement or otherwise incumber the land, but that it is simply a personal contract which can in no way be enforced against the land. It is contended here that it is simply a contract on the part of Isadore M. Gladding to clear out a road; that it does not appear that the road was ever cleared, and that

no time is fixed in the agreement in which the clearing was to be done; that while it is possible that Gladding might be liable on his covenant for damages, it was not an easement or grant of any kind, and that it was not a license, and, even if it were, it was revoked by the. failure to make and clear the road, and the sale and conveyance of the land; that the parties construed the instrument to be only the personal contract of Isadore M. Gladding to clear, make, and fence the road, and not the grant of an easement. This contention is made on account of the provision in the agreement in relation to security for the insuring of the faithful defense and maintenance of said right of way. On this proposition the simple fact that security was taken by the respondents for the faithful performance of the contract on the part of Isadore M. Gladding, does not in itself refute the idea that the parties intended to convey and receive a right of way across the land described. It was competent for them to provide for security in case of a breach for the clearing of the right of way, or for that matter for any other breach of the contract.

The grant of a right of way does not have to be in any particular form of words. The expression "right of way" is a common expression occurring so frequently that it may be said that its meaning is well understood by intelligent persons generally, and that it is understood to be the right of a person to travel over a particular tract of land without interference. If there be no ambiguity, the intention of the parties must of course be arrived at from the language used, where the words are to be construed in their ordinary and popular sense. But if there be ambiguity, the intention of the parties must be determined from such construction as can reasonably be given to the language used and to all the circumstances surrounding the transaction, including the situation of the parties, the subject-matter of the deed or contract, and the subsequent acts of the parties under it. In this case, so far as the formalities of the alleged grant are concerned, they were all met. The contract was in writing; it was under

seal; there was a consideration, execution, and acknowledgment; and if it can be conceded that the description was sufficient to enable one to locate the land attempted to be granted, then it seems to us that a sufficient grant of an easement appears. If we have a proper conception of the manner in which the land lies, it is expressed in the accompanying map, the heavy lines near the north and west sides of the Isadore M. Gladding tract showing the county road and the light lines at the east side showing the right of way which was conveyed.

NORTH

North line of Twp. 23

Isadore M. Gladding tract

Swanson 3 acre tract

K. E. Gladding Tract

Buckley Donation Claim

From this map it will be seen that the right of way conveyed, if it started from the K. E. Gladding tract, must necessarily have crossed the Swanson tract south of the south line of the Isadore M. Gladding tract, and that when it did so cross the Swanson tract, and then turned north, as is stated in the contract, and ran thence north along the east line over and across the land owned by Isadore M. Gladding, to the county road, it must necessarily have run along the whole of the east boundary of the Isadore M. Gladding tract and have described an eight-foot strip on the east boundary of said tract. It is of no concern to the appellants whether the description is definite or indefinite up to the point where it reaches his land. From there on, as we have seen, the description is definite and certain, and includes eight feet off of the east boundary of appellants' land. Nor does the right of the respondents to deed this right of way across Swanson's three-acre tract concern the appellants. It may reasonably be inferred that Isadore M. Gladding had authority of some kind, which it was not necessary for him to discover to strangers, to run the line across said tract and also northward along the tract immediately south of the Isadore M. Gladding tract. In addition to this, it is well established that, if a right of way is entered upon and used, the way becomes definite and fixed even though it may have been indefinite in its description.

Appellants cite the case of *Van de Vanter v. Flaherty*, 37 Wash. 218, 79 Pac. 794, in support of the theory that this description is too indefinite, but an examination of that case convinces us that it does not bear on the circumstances of the case at bar. That case was decided on the theory that the findings of fact and decree described the land contrary to the description given in the complaint. The court, in concluding its remarks, said:-

"The case does not seem to have been tried with a view to locating the roadway in question with any degree of certainty, and this court is unable, from the testimony, to cor-

rect the description, or remove the ambiguity which is apparent on the face of the record. The decree is certainly a departure from the complaint, and all the testimony seems to locate the roadway at some place along the westerly side of the southwest quarter of the northeast quarter of said section."

There was evidently no intention in that case to overrule the case of *Everett Water Co. v. Powers*, 37 Wash. 143, 79 Pac. 617, a case which was decided at the same term of the court, where many of the questions were raised that are raised in this case, and where the court, in discussing the question of uncertainty as to the location of the right of way, said:

"It is next urged that the deed is void for uncertainty as to the location of the right of way. It is true, the exact boundaries are not described in the deed, except as to the tracts of land over which the pipe lines are run. Such was true, also, in the case of *McCue v. Bellingham Bay Water Co., supra*. After the execution of the deed granting a roving right of way, the water company in that case entered upon the land, selected a strip, and took possession of it as the right of way. The court said: 'When it went upon the land described in the deed and cleared and prepared its right of way, its grant became fixed and certain.' In the case at bar the pleadings admit, and the evidence shows, that such a selection and occupation of a right of way strip took place in 1891. Not only was the route marked out and selected, but a ditch was dug upon the strip, with the intention of using the right of way for the purposes of the grant. Under the *McCue* case, the grant here therefore became fixed and certain as to location."

The *McCue* case referred to is reported in 5 Wash. 156, 31 Pac. 461. It may be well to say here that the testimony in this case, which was based entirely upon affidavits, is absolutely conflicting as to the occupancy of this alleged right of way as a road; the testimony offered by the appellants being that the right of way was never occupied as a road by the respondents or any one else, and that it was in a wild condition at the time of the purchase of the land by the ap-

pellants; while the respondents, on the contrary, introduced testimony tending to show that for many years prior to the appellants' purchase of the land and prior to the grant of the right of way, this strip of land had been used by the respondents as a way of ingress to and egress from the county road, and that there was no other way of reaching the county road. The trial court evidently adopted the theory of facts as shown by the testimony of the respondents, and we are inclined to do the same, and on this theory of the testimony, that the road was used and known to be used as a road prior to appellants' purchase of the land, this opinion is based. The scrivener who made out this instrument also testified in the case that, when the parties came to him to have the instrument drawn, they told him that they wanted to deed a right of way, and that in his presence the respondents paid the appellants $200 as a consideration for the same.

So far as we are able to ascertain, it has always been the law that where a servitude, such as a right of way, has been granted by an instrument in writing, the fact that the dominant tenement has not been acquired at the date of the instrument cannot, after it has been actually acquired, prevent the servitude becoming a legal accessory to the dominant tenement, provided the servitude was so used as to give reasonable notice of the burden to any person in whom the property of the land might subsequently become vested. This was held in *North British R. Co. v. Park Yard Co.*, Appeal Cases, 1898, p. 643, and the court, in passing upon this question and reviewing the authorities at length, said:

"I think it necessary to add that, in my opinion, the fact that the contract or writing to which the origin of the privilege is ascribed is conceived in terms which might appropriately be employed in the constitution of a personal obligation is not conclusive against the constitution of a proper burden upon the land, if it be matter of reasonable inference from the terms of the document taken as a whole, or from the circumstances of the case, that the constitution of a real servitude was what the parties contemplated."

This has been the holding in America as well as in England. The text in 14 Cyc., 1162, is as follows:

"It is settled law that easements may be created by agreements or covenants, that one shall have a right or privilege in the estate of another as well as by express grants; such agreements are grants in effect;"

citing *Van Ohlen v. Van Ohlen*, 56 Ill. 528, where it was said:

"It is insisted by counsel for appellee that this is a mere license, revocable at will, and cannot become a vested right of the character of an easement, except by deed under seal. But the cases cited in support of this position differ from the one at bar in this essential particular: Here, there was a valuable consideration passing from the plaintiff to the defendant, for which the latter agreed to perform a certain act, the effect of which would be a benefit to the plaintiff. The cases cited were mere licenses without consideration, and, of course, revocable when not created by deed."

The case at bar does not go so far as cases cited, because there was an instrument under seal in this case; but otherwise the cases are parallel, for here, as there, there was a valuable consideration passing from the plaintiff to the defendant. What could the consideration for the payment of the $200 have been? Certainly not, as counsel intimate, the clearing of the strip of land described; for what could the clearing benefit the grantee if she was not to be permitted to use the strip of land? It is manifest that the $200 was paid for the right of way. In *Dickinson v. Crowell*, 120 Iowa 254, 94 N. W. 495, it was decided that, where a right of way was decreed over the lands of another, it was not necessary for the parties to expressly designate its location but it was sufficient if a right of way was used and acquiesced in. In *Ashelford v. Willis*, 194 Ill. 492, 502, 62 N. E. 817, the court said:

"While at law, in order to constitute a valid conveyance of real estate or any interest in land, it must be by deed having a seal and attended with certain formalities, yet in equity

a good and indefeasible title may be conveyed without any writing whatever. The rights of the parties depend upon the character and extent of performance and the effect upon the donee by allowing repudiation. Practically all the writers on equity jurisprudence are agreed that contracts not under seal, and even contracts not in writing affecting or concerning an interest in land, are recognized in equity, if they have been so far performed that to permit a party to repudiate them would of itself be a fraud,—and this court is committed to that doctrine;"

citing many cases. The overwhelming weight of authority, without further citation, is to the same effect. As to the question that equity has no jurisdiction in this particular case, it was stated by the supreme court of Illinois in *Carpenter v. Capital Elec. Co.*, 178 Ill. 29, 36, 52 N. E. 973, 43 L. R. A. 645:

"Where a party has a right of way over, or an easement in, certain real estate, and the same is obstructed, equity has jurisdiction, as the injured party has no adequate remedy at law. . . . Moreover, the injury complained of is one of a continuing or permanent nature, for which an action at law would not afford a complete and adequate remedy."

To the same effect is *Sterling's Appeal*, 111 Pa. St. 35, 2 Atl. 705, 56 Am. Rep. 246.

Lastly, the appellants cannot complain that the grant was not recorded at the time of their purchase, for the purchaser of a servient estate is charged with notice by open and visible use of the easement, and is not under such circumstances protected by recording acts. *Croke v. American Nat. Bank*, 18 Colo. App. 3, 70 Pac. 229; *Van de Vanter v. Flaherty, supra.*

Under the weight of the testimony in this case, as we view it, we think the court committed no error in decreeing the injunction which he did. The judgment will therefore be affirmed.

RUDKIN, C. J., CHADWICK, FULLERTON, MOUNT, CROW, and GOSE, JJ., concur.

MORRIS and PARKER, JJ., took no part.