[No. 3541-7-III.   Division Three.   December 16, 1980.]

CECIL L. ROGGOW, ET AL, *Appellants,* v. CHARLES L. HAGERTY, ET AL, *Respondents.*

*Kelly Hancock,* for appellants.

*Samuel C. Rutherford,* for respondents.

ROE, J.—Plaintiffs Roggow appeal a trial court judgment quieting title in certain land to the Hagertys and extinguishing a claim of a right–of–way across Hagertys' property. We affirm as to the quiet title action respecting the boundary and reverse on the easement issue.

Hagertys and Roggows own adjacent property in Okanogan County. Defendants Hagerty own property adjacent to a county road on the west. Immediately easterly of their property is that owned by plaintiffs Roggow. In 1940, Hagertys' predecessors–in–interest, the Nelsons, granted a right–of–way to the Rhoads, Roggows' predecessors–in–interest. This allowed the Rhoads to reach their property (now Roggows') from the county road by crossing the Nelson property.

This agreement was signed and acknowledged on May 10, 1940, and recorded in October 1940; it reads in part:

[F]irst parties . . . do grant unto the second parties an easement . . .

Said easement shall be for the purpose of reaching [Rhoads' land] . . . and to be in the nature of a private righty–of–way [*sic*] for the purpose of ingress and egress and moving necessary and [*sic*] equipment from the highway to said premises and tomake [*sic*] use and occupation of said premises more convenient. . . .

This agreement shall apply to the parties hereto and their *successors and assigns.*

(Italics ours.)

No width of the easement was specified in the right–of–way agreement, but Roggows seek 30 feet. There was conflicting evidence at trial whether the easement was ever used and, if so, to what extent.

At the time the easement was granted in 1940, the easterly (Roggows') land was owned by the Oroville–Tonasket Irrigation District. The Rhoads did not acquire the land until the following year, 1941. There was no evidence presented that the Rhoads had any interest in the land in 1940 when the easement was granted.

In 1951, after various mesne transfers, the Roggows purchased the easterly property. In 1975, also after intermediate transfers, the adjacent westerly property was purchased by the Hagertys. In that year, the dispute began. Roggows claimed Hagertys moved a building onto and planted trees over the easement. Hagertys asserted there was no easement. In 1977, Hagertys removed approximately 930 feet of north–south fence, the possible boundary between Hagertys' and Roggows' properties. Hagertys claimed Roggows had moved the fence onto Hagertys' property the previous night. Roggows claimed the fence had not been moved in 22 years. They began to rebuild it in 1978.

Roggows sued to quiet title in them up to the fence line and enjoin Hagertys from interfering with it. They also sought an injunction to prevent Hagertys from blocking the easement. At trial, both parties stipulated to the location of the north–south fence line. Extensive evidence was introduced as to the existence of the easement.

The court quieted title according to the stipulation; ordered Roggows to remove that part of their new fence which was not in the stipulated location; and assessed damages against Hagertys for removal of the old fence. The court found the easement was "at best" an easement in gross, the use of which was at all times permissive, and terminated it.

■ Roggows assign error to the trial court's finding that the placement of the new fence did not conform to the stipulation and to the finding that Roggows' use of the easement was permissive, thus precluding the establishment of an easement by prescription. There was substantial evidence to support both findings and they will not be dis-

turbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Roggows also assign error to the trial court's finding that the easement was one in gross and was terminated. They claim that an easement appurtenant was created even if Rhoads had no interest in the land. They then argue that the Rhoads must have had some interest in the land, that easements in gross are not favored in the law, and therefore the burden is on the Hagertys to show that this was not an easement appurtenant.

Hagertys assert there must be a dominant tenement for there to be an easement appurtenant and, since Rhoads (Roggows' predecessors) did not own the land, this was therefore a nonassignable easement in gross (citing *Waller v. Hildebrecht,* 295 Ill. 116, 128 N.E. 807 (1920)). They also claim that the Roggows should be equitably estopped to assert an easement because the Roggows sat by without objection while the Hagertys "built their house in the controverted area."

The general rule is that to create an easement appurtenant there must be two estates in existence at the time of creation of the alleged easement: a dominant tenement and a servient tenement. 3 R. Powell, *Real Property* ¶¶ 409, 410, 418 (1979); 3 H. Tiffany, *Real Property* §§ 758, 759 (3d ed. 1939 & Supp. 1980); 2 *American Law of Property* §§ 8.6, 8.7 (A.J. Casner ed. 1952); 2 G. Thompson, *Real Property* §§ 318, 321, 322 (1980 repl.). For an easement in gross, however, there need not be two estates, for the easement belongs to the grantee regardless of ownership of any other land. 3 H. Tiffany, *Real Property* § 758 (3d ed. 1939 & Supp. 1980); 3 R. Powell, *Real Property* ¶ 419 (1979).

When an instrument purports to create an easement in favor of a grantee to facilitate some other parcel of land which the grantee does not presently own but subsequently acquires, the easement is an easement in gross until the land is acquired, at which time it becomes an easement appurtenant. 3 H. Tiffany, *Real Property* § 759 (3d ed.

1939 & Supp. 1980). In *Kalinowski v. Jacobowski,* 52 Wash. 359, 366, 100 P. 852 (1909), the court stated:

> So far as we are able to ascertain, it has always been the law that where a servitude, such as a right of way, has been granted by an instrument in writing, the fact that the dominant tenement has not been acquired at the date of the instrument cannot, after it has been actually acquired, prevent the servitude becoming a legal accessory to the dominant tenement, provided the servitude was so used as to give reasonable notice of the burden to any person in whom the property of the land might subsequently become vested.

*Accord, Percival v. Williams,* 82 Vt. 531, 74 A. 321 (1909). *See* 2 G. Thompson, *Real Property* § 324, at 81 (1980 repl.):

> Hence, although one has acquired . . . a right–of–way by deed to him, his heirs and assigns, the same not being appurtenant to any land then owned by him, the right is merely a right in gross, and he cannot assign it to a purchaser of his land to which the way is not incident.

*But see Curtin v. Franchetti,* 156 Conn. 387, 242 A.2d 725 (1968).

There is a very strong presumption in Washington that easements are appurtenant; easements in gross are not favored. *Pioneer Sand & Gravel Co. v. Seattle Constr. & Dry Dock Co.,* 102 Wash. 608, 618, 173 P. 508 (1918); *Winsten v. Prichard,* 23 Wn. App. 428, 430, 597 P.2d 415 (1979); *Kemery v. Mylroie,* 8 Wn. App. 344, 346, 506 P.2d 319 (1973).

We need not consider the element of estoppel because there was no evidence presented at trial that the Roggows sat by and did nothing while the Hagertys built a house on the easement. Rather, all testimony on the issue was to the effect that the building (a "3–door cabin") was merely moved from an east–west position parallel to the easement to a north–south position to the surprise of the Roggows, who did not see it happen. There was no evidence presented that the house was built on the property at any time after the Roggows took possession.

■ This recorded easement appurtenant was an interest in land which was conveyed with the dominant tenement regardless of whether it was specifically mentioned in the grantee's deed. *Loose v. Locke,* 25 Wn.2d 599, 171 P.2d 849 (1946); *Cowan v. Gladder,* 120 Wash. 144, 206 P. 923 (1922). Mere nonuse of an easement does not constitute abandonment, *McCue v. Bellingham Bay Water Co.,* 5 Wash. 156, 31 P. 461 (1892).

The trial court's determination as to the extinguishment of the easement is reversed and remanded for consideration of the extent and location of it. *See Seattle v. Nazarenus,* 60 Wn.2d 657, 374 P.2d 1014 (1962); *Hanson v. Lee,* 3 Wn. App. 461, 466, 476 P.2d 550 (1970).

GREEN, C.J., and MCINTURFF, J., concur.