[No. 23813-2-I. Division One. July 2, 1990.]

Bob D. Beebe, *as Trustee*, et al, *Respondents*, v. John Swerda, et al, *Appellants.*

---

[9]483 U.S. 44, 55-56, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973)).

*Sam K. Eck,* for appellants.

*Meredith A. Copeland* and *Evan E. Inslee,* for respondents.

SCHOLFIELD, J.—The defendants, collectively Swerda, appeal the order of summary judgment granted in favor of the plaintiffs, collectively Beebe, decreeing the validity of the easement across Swerda's property and enjoining Swerda from interfering with access, use and enjoyment of the easement. We affirm.

FACTS

On April 12, 1945, the Elkens conveyed certain real property in King County by statutory warranty deed to the Putnams. The real property that was conveyed included the parcels now owned by both Beebe and Swerda, as well as an additional parcel. The deed was recorded under Auditor's file 3463320. The deed stated that the conveyance was

> SUBJECT to an easement for road purposes for the use and benefit of the public and for the use and benefit of the property herein conveyed, measuring Fifteen Feet (15') on each side of the west line of the East half (E1/2) of the Northeast Quarter (NE1/4) of the Northwest Quarter (NW1/4) of the Northwest Quarter (NW1/4) of said Section 34, Township 25 North, Range 6 E.W.M., and measuring Fifteen Feet (15') on the west side of the east property line of the West one–half (W1/2) of the Southeast Quarter (SE1/4) of the Northwest Quarter (NW1/4) of the Northwest Quarter (NW1/4) of said section, township and range, and said easement shall constitute a covenant running with the land.

The real property conveyed by Elken to Putnam is illustrated in the appendix. It is the property lying within the heavy black outline and includes tax lots 20, 18 and 29. The parcels now owned by Beebe and Swerda are also identified, as is the additional parcel which is now owned by the Romans.

The easement described in the Elken to Putnam deed is also illustrated in the appendix. The easement lies on the west 15 feet of the Roman property and the east 15 feet of the Swerda and Beebe properties. The Romans, current owners of the parcel to the east of Swerda, do not dispute the existence of the easement created by Elken.

A county road runs east–west along the northern boundary of the subject property. Appendix. The easement connects the southern portion of the property conveyed by Elken to Putnam (now owned by Beebe) with the county road. Without the easement, the Beebe parcel would be landlocked.

In 1950, Putnam conveyed by statutory warranty deed the western portion of the property (the two parcels now owned by Swerda and Beebe) to the Phillipses "SUBJECT

to an easement for road purposes for use and benefit of the public and for use and benefit of the property herein conveyed . . . and said easement shall constitute a covenant running with land." This same language is contained in the Elken to Putnam transfer.

The Phillipses subdivided the property in 1955 when they sold the northern portion (now owned by Swerda) to the Naslunds. The language in the Phillips to Naslund deed described "[t]he north half of the west half of the east half of the northwest quarter . . . EXCEPT roads," and was "SUBJECT to Easements now of record."

Kuhnley, the former Mrs. Phillips, conveyed the southern portion of the property (now owned by Beebe) to Eastside, Inc., in 1961 "[s]ubject to all easements, restrictions and reservations of record, if any."

All subsequent conveyances of the north and south portions of the property owned by Elken, Putnam, and then–Phillips were either made subject to easements of record or specifically referenced the original deed from Elken to Putnam creating the easement.

Swerda's real estate contract dated January 9, 1978, specifically stated that his fulfillment deed would be "subject to the following: . . . EASEMENT RECORDED UNDER AUDITOR'S FILE NO. 3463320." Similarly, Swerda's warranty fulfillment deed specifically stated that title was conveyed "subject to easements of record under Auditor's file 3463320." The subject easement also appeared on a sketch of the property which Swerda obtained when he purchased the property.

On May 27, 1988, Beebe filed a complaint for injunction, declaratory relief and quiet title against Swerda. On December 6, 1988, Beebe moved for summary judgment to enforce the easement and enjoin interference with Beebe's access, use and enjoyment of the easement. On January 26, 1989, Swerda filed a countermotion for summary judgment, seeking to quiet title to his property and to invalidate the easement.

On February 16, 1989, the trial court filed an order of summary judgment decreeing validity of easement in favor of Beebe and enjoining Swerda from interfering with access, use and enjoyment of the easement. The order stated that Swerda was to remove all improvements within the easement within 30 calendar days after notice in writing from Beebe that he intends to commence work thereon. Swerda's subsequent motion for reconsideration was denied on March 21, 1989. This appeal timely followed.

CREATION OF AN EASEMENT

Swerda argues that no easement was created in the original Elken to Putnam deed, as the language "subject to an easement" is not a limitation on the quantum of the estate granted, but is an exception to the liability assumed by the covenants of warranty. He also argues that no appurtenant easement was created because there was only one estate in existence.

An express conveyance of an easement, by grant or reservation, must be made by written deed. RCW 64.04.010. No particular words are necessary to constitute a grant, and any words which clearly show the intention to give an easement, which is by law grantable, are sufficient to effect that purpose, providing the language is sufficiently definite and certain in its terms. 28 C.J.S. *Easements* § 24 (1941); 25 Am. Jur. 2d *Easements and Licenses* § 20 (1966); 2 G. Thompson, *Real Property* § 320, at 47 (1980 repl.).

> A covenant or agreement may operate as a grant of an easement if, to carry out the intention of the parties thereto, it is necessary to give it that effect.

2 G. Thompson, *Real Property* § 320, at 53 (1980 repl.).

In construing a deed, the court is required to carry out the intentions of the parties and, if the deed admits of more than one construction, it must be construed most strictly against the grantor and most favorably to the grantee. *Hodgins v. State,* 9 Wn. App. 486, 513 P.2d 304 (1973). In the present case, the parties concede that the language was not ambiguous. Thus, the intention of the

parties must be determined from the language used. The words are to be construed in their ordinary and popular sense. *See Kalinowski v. Jacobowski,* 52 Wash. 359, 362, 100 P. 852 (1909). Extraneous circumstances may not be considered. 25 Am. Jur. 2d *Easements and Licenses* § 23 (1966).

■ No Washington case has decided whether the words "subject to" in a deed conveying land are sufficient to create an easement. In other jurisdictions, there is a split of authority on this issue. In *DaGrosa v. Calabro,* 105 N.Y.S.2d 178, 181 (N.Y. Sup. Ct. 1951), the deed stated that the property was "subject to" the plaintiff's easement. The court construed the words "subject to" as the equivalent of the word "reserving" and held that the document constituted the reservation of an easement in gross. *See also Kelley v. Haas,* 262 S.W.2d 687 (Ky. 1953); *Barber v. New Rochelle,* 99 N.Y.S.2d 393 (N.Y. Sup. Ct. 1950). However, in *Procacci v. Zacco,* 324 So. 2d 180, 182 (Fla. Dist. Ct. App. 1975), the court held that the language "subject to" was insufficient to reserve an easement of any kind.

*Queen City Sav. & Loan Ass'n v. Mechem,* 14 Wn. App. 470, 543 P.2d 355 (1975) is comparable to the present case, both with respect to the manner in which the easement was created and enforcing the intent of the parties. In a conveyance from Clifford to Stanford's predecessor, the description concluded with "and EXCEPT a strip of land 60 feet in width along the westerly margin for road." Queen City ultimately acquired a portion of the property conveyed to Stanford's predecessor which fronted along the 60–foot strip. Mechem obstructed, presumably by use of barriers, access to the road by occupants of the Queen City property. The trial court held that Queen City had an easement because it purchased from Stanford, who was granted an easement over the 60–foot strip in the deed from Clifford to Stanford's predecessor. The Court of Appeals held that the easement was appurtenant to all lands conveyed to Stanford's predecessor and, therefore, was conveyed to Queen

City as an easement appurtenant to the land it purchased from Stanford.

In the Clifford conveyance to Stanford's predecessor, no particular dominant estate was identified. The servient estate was the property sold to Stanford's predecessor. Under the circumstances, the trial court found that the intent of the parties was to grant to Stanford's predecessor an access easement over the 60–foot strip. The easement, being appurtenant to all lands conveyed to Stanford's predecessor, was included in the conveyance to Queen City when it purchased from Stanford.

In the case sub judice, the reservation of an easement makes specific reference to the intended beneficiaries of the easement by the provision "for the use and benefit of the public and for the use and benefit of the property herein conveyed". As in *Queen City,* the necessity for an easement was unclear at the time of the conveyance because Putnam would not need an easement over his own property. Furthermore, nothing more than an easement in gross could exist at the time of the conveyance because there was only one estate. By definition, two estates are required for an appurtenant easement. An easement is generally defined as:

> A right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with a general property in the owner.

Black's Law Dictionary 599 (4th ed. 1968). *See also State ex rel. Shorett v. Blue Ridge Club, Inc.,* 22 Wn.2d 487, 494, 156 P.2d 667 (1945). An appurtenant easement is "[o]ne which is attached to and passes with the dominant tenement as an appurtenance thereof." Black's Law Dictionary 599 (4th ed. 1968).

A dominant and a servient estate were not identifiable at the time of the conveyance involved in *Queen City.* However, it is clear that the *Queen City* court relied upon the trial court's finding that the intent of the parties to the original conveyance was to create an easement to benefit the lands being conveyed. The same intent is manifestly clear in the Elken deed. The language used, the precise

description of the location and extent of the easement, and the provision that "said easement shall constitute a covenant running with the land" are all consistent with an intent to create an easement. Furthermore, the necessity for an easement to serve the property now owned by Beebe is compelling. Without the easement, Beebe's property is landlocked. It took the passage of time and several conveyances to reach the point where a servient estate and a dominant estate in separate ownerships came into existence. They are in existence now.

Easements in gross can become appurtenant easements where that result is consistent with the intent of the parties. The rule is stated in *Roggow v. Hagerty,* 27 Wn. App. 908, 911–12, 621 P.2d 195 (1980) as follows:

> When an instrument purports to create an easement in favor of a grantee to facilitate some other parcel of land which the grantee does not presently own but subsequently acquires, the easement is an easement in gross until the land is acquired, at which time it becomes an easement appurtenant. 3 H. Tiffany, *Real Property* § 759 (3d ed. 1939 & Supp. 1980). In *Kalinowski v. Jacobowski,* 52 Wash. 359, 366, 100 P. 852 (1909), the court stated:
>
>> So far as we are able to ascertain, it has always been the law that where a servitude, such as a right of way, has been granted by an instrument in writing, the fact that the dominant tenement has not been acquired at the date of the instrument cannot, after it has been actually acquired, prevent the servitude becoming a legal accessory to the dominant tenement, provided the servitude was so used as to give reasonable notice of the burden to any person in whom the property of the land might subsequently become vested.

The *Roggow* and *Kalinowski* cases did not involve fact patterns identical to the facts of this case. However, those cases held that an easement can be created for the benefit of a dominant tenement which does not become identifiable until a later time. The *Queen City* case, however, is comparable and supports the result we reach here.

█ Agreement to the easement by the owner of the servient estate is an indispensable element of the creation of an easement. The facts of this case reflect that Swerda and all of his predecessors in title going back to Putnam, the

original grantee, had notice of the easement involved in this case. *Mahon v. Haas,* 2 Wn. App. 560, 468 P.2d 713 (1970). We hold that the judgment granting an easement to Beebe should be affirmed.

## STATUTE OF LIMITATIONS

Swerda argues that even if an easement exists, he has been using the property adverse to such easement rights for a period in excess of 7 years, and thus, Beebe's action to enforce the easement is barred by the 7–year statute of limitations. Swerda's argument is that Beebe's easement has been extinguished by Swerda's adverse use for a period of 7 years.

Swerda cites RCW 7.28.050 in support of his argument that he possessed the easement in question adverse to Beebe under a claim of title, and thus the statute of limitations barred an action to quiet title. RCW 7.28.050 provides in pertinent part:

[A]ll actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual, open and notorious possession for seven successive years, having a connected title in law . . . deducible of record . . . shall be brought within seven years next after possession being taken . . ..

While it is legally possible for an easement to be terminated by adverse use for the prescriptive period by the owner of the servient tenement, *Burkhard v. Bowen,* 32 Wn.2d 613, 203 P.2d 361 (1949), the elements required to do so are the same elements that must be found in order to obtain an easement through adverse possession. To establish prescriptive rights by adverse possession, the claimant must show use which was open, notorious, continuous, uninterrupted, and adverse to the owner for the statutory period. *Mood v. Banchero,* 67 Wn.2d 835, 841, 410 P.2d 776 (1966). *See also* 1 Washington State Bar Ass'n, *Real Property Deskbook* § 15.48 (2d ed. 1986).

*Burkhard v. Bowen, supra,* held that, among themselves, common grantees from the dedicator may not question the right of ingress and egress over a platted street,

and that such a private easement cannot be destroyed even by adverse possession. Swerda cites no case holding that a landowner extinguished an easement across his own property by adverse possession. The owner of a servient estate has the right to use his land for purposes not inconsistent with its ultimate use for reserved easement purposes during a period of nonuse. The property remains in the ownership of the servient estate, and the owner is entitled to use it for any purpose that does not interfere with the proper enjoyment of the easement. *Thompson v. Smith,* 59 Wn.2d 397, 407–08, 367 P.2d 798 (1962). This right of the servient estate owner to the use of the property covered by the easement during periods when the easement is not being used means that the use of the area covered by the easement is not adverse to the owner of the dominant estate. The use of the property by Swerda during periods of nonuse by Beebe and his predecessors in interest is not inconsistent with the future use of the easement. *Edmonds v. Williams,* 54 Wn. App. 632, 636, 774 P.2d 1241 (1989). Swerda's use of the property during the period of nonuse by Beebe is more accurately characterized as privileged rather than adverse. Accordingly, we find that Swerda did not extinguish the easement by adverse possession.

GOVERNMENTAL PERMITS

Swerda argues that Beebe should be required to obtain the necessary permits or show such permits are inapplicable prior to his interference with Swerda's improvements on the property.

We find that Swerda's contention is without merit. Swerda cites no persuasive authority which holds that the owner of an easement must state the use which he intends to make of his easement and obtain the proper governmental permits before interference with improvements on the easement.

Swerda cites *Thompson v. Smith, supra,* in support of his argument that prior to the removal of improvements Beebe must obtain the necessary governmental permits for

use of the easement for road purposes. In *Thompson,* Smith constructed a 12– by 24–foot concrete slab, most of which was on a portion of his property that was subject to a reservation for road purposes. Smith parked cars on the slab and placed lumber and other articles on it. The plaintiffs alleged in part that the slab was an obstruction within the area reserved for a road. The trial court agreed.

On appeal, the *Thompson* court stated at page 409 that the servient owner, Smith, could make limited use of the easement "until it is required for road purposes". The court found there was no evidence that the property had ever been used for a road, and no evidence that it will be used as such in the immediate future. "[I]f and when such a roadway is put in, the [concrete] slab, if it is an interference, would have to be removed. *Thompson v. Smith, supra* at 409.

■ *Thompson* is consistent with the trial court's ruling in the present case. In *Thompson,* Smith did not have to remove the improvement until the property was to be used as a road. Similarly, here the trial court has ordered that Swerda shall be given 30 days to remove his improvements after notice from Beebe that he intends to commence work on the easement. Swerda has cited no authority for his argument that the proper governmental permits must also be acquired before removal of his improvements, nor does *Thompson* so hold.

Accordingly, we hold that the trial court's injunctive relief was proper.

Judgment affirmed.

SWANSON and BAKER, JJ., concur.

Review denied at 115 Wn.2d 1025 (1990).