FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 18

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BART ADAMS, | No. 43288-9-II |
| Appellant, | |
| v. | |
| SHANE DEEN, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, A.C.J. — Bart Adams appeals the trial court's summary dismissal of his trespass action and request for a permanent injunction against neighboring property owner Shane Deen and its grant to Deen of an express easement for ingress, egress, and utilities over the northernmost 30 feet of Adams's property. This dispute relates to Deen's use of a long-extant driveway running through Adams's undeveloped land to access Deen's otherwise landlocked property. On appeal, Adams argues, inter alia, that Deen has failed to establish that an express easement or easement implied from prior use serves his property. Alternatively, Adams argues that if an easement implied from prior use exists, remand is necessary to determine the scope of the easement.

We hold that while Adams is correct that an express easement has never burdened his property, an easement implied from prior use does. Accordingly, we affirm the trial court's summary dismissal of Adams's trespass action and permanent injunction. And based on Deen's

concession at oral argument before this court, we vacate the trial court's order granting a 30 foot express easement and remand for the trial court to determine the correct scope of the implied easement for ingress, egress, and utilities serving the Deen parcel.

## FACTS

BACKGROUND

Floyd and Eloise Corbin originally owned the Adams and Deen parcels as part of a larger estate in Roy, Washington. In 1973, the Corbins conveyed the property by statutory warranty deed to Ralph and Ann Fiala.[1] In 1984-85, the Fialas entered into two boundary line adjustments with a neighbor, Richard Raymond. The first adjustment transferred the east half of the Fiala property to Raymond. The second adjustment, in 1985, created two parcels out of the existing Fiala property—the Deen and Adams parcels as they exist today.[2] It is unclear why the Fialas subdivided the property, but a house has existed on what became the Deen parcel since at least 1976.

Homeowners access the house on the Deen parcel by a driveway extending east from 4th Avenue South, a public thoroughfare. The driveway is approximately 9 feet wide and runs through the northernmost 30 feet of the undeveloped Adams parcel and "appears to have been there for many years." Clerk's Papers (CP) at 36. Utility lines and pipes (including power,

---

[1] The Fialas did not record this deed until April 1989.

[2] We note that separate legal lots cannot be created through a boundary line adjustment without following a municipality's short plat or subdivision approval process. *See City of Seattle v. Crispin*, 149 Wn.2d 896, 903-04, 71 P.3d 208 (2003); RCW 58.17.060(1). Here, it is unclear from the record whether the Fialas followed Pierce County's short plat process and neither party raises the issue. Accordingly, we do not further address this issue.

telephone, and water) serving the Deen parcel also run through the northernmost 30 feet of the Adams parcel.

In May 1989, the Fialas conveyed both parcels in a single deed to Edward and June Pierce. The deed accurately describes both parcels, referring to the Adams parcel as "Parcel A" and the Deen parcel as "Parcel B." The deed also lists easements (described as Parcels C through G) that serve both parcels. One such easement, "Parcel G," describes only land already contained in "Parcel A"—the northernmost 30 feet of the Adams parcel running to a point even with the eastern boundary of the Deen property. According to the Fiala-Pierce deed, a "non-exclusive easement for ingress, egress and utilities over" the northernmost 30 feet of the Adams property served the Deen parcel. CP at 67.

In 1998, the Pierces conveyed the Adams and Deen parcels in a single deed to David Reed and Marcia Barnett. This deed included substantially the same description of the parcels and easements as described in the Fiala-Pierce deed. Later, Reed and Barnett conveyed the two parcels to Jill and Timothy Clothier by a single deed in 2003. The Clothier deed does not explicitly reference the easements (as did the previous deeds) but states that the deed is "subject to easements, reservations, covenants, conditions, restrictions and agreements of record, if any, as set forth in the commitment for title insurance."[3] CP at 72 (capitalization omitted).

In 2005, the Clothiers conveyed the Adams and Deen parcels to Patricia Powers in separate warranty deeds. Neither warranty deed mentions the easements listed in the Fiala-Pierce or Pierce-Reed deeds. However, at the time Powers purchased both parcels, she obtained a loan from Pierce Commercial Bank secured by a deed of trust against the Deen parcel, which

---

[3] The commitment for title insurance from the Clothier deed is not part of the record for review.

provided, "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property . . . TOGETHER WITH . . . all easements, appurtenances, and fixtures now or hereafter a part of the property." CP at 82-83. This deed of trust was eventually assigned to Deutsche Bank, as trustee.

In 2007, Powers obtained a loan from Adams secured by a deed of trust on both the Adams and Deen parcels. After Powers defaulted on the loan, Adams foreclosed on both parcels in December 2008. Because the Deutsche Bank deed was recorded prior to the Adams deed, Adams's title to the Deen parcel remained subject to the bank's senior security interest, a point Adams has not disputed.

In 2009, Deutsche Bank obtained title to the Deen parcel after Powers defaulted on her bank loan, eliminating Adams's interest in the Deen parcel. On October 2, Deutsche Bank conveyed the Deen parcel to Deen by "Special/Limited Warranty Deed." This deed included the alleged express easement over the northernmost 30 feet of the Adams parcel that appeared in the Fiala-Pierce and Pierce-Reed deeds.

PROCEDURE

Almost immediately after Deen moved into the home on his parcel, Adams filed a complaint in Pierce County Superior Court against Deen alleging trespass. Adams requested that the court enter a "declaratory judgment determining that the Defendant [Deen] has no easement across" the northernmost 30 feet of the Adams parcel and that Deen be permanently enjoined from entering Adams's property. CP at 2.

In September 2011, Deen moved for summary judgment asking the court to dismiss Adams's complaint and enter judgment declaring that an easement over the northernmost 30 feet

4

of Adams's property serves the Deen parcel. Deen argued that based on the chain of title for both properties and the history of the driveway serving the Deen parcel, the trial court should rule that either (1) an express easement appurtenant over the northernmost 30 feet of the Adams parcel serves the Deen parcel or (2) an implied easement serves the Deen parcel. Alternatively, Deen argued that an easement of necessity serves the Deen parcel because it is landlocked.

Adams filed a responsive memorandum in which he also requested summary judgment. Adams did not dispute the chain of title for both properties or the history of use of the driveway serving the Deen parcel. Instead, he argued that (1) contrary to Deen's assertions, these undisputed facts did not establish the existence of an easement (express, implied, or of necessity) as a matter of law, and (2) Deen should instead be forced to seek a "private way of necessity" under RCW 8.24.030.[4]

After oral argument, the court granted Deen's motion for summary judgment and denied Adams's motion. In its written order, the court decreed that the Deen property "is the beneficiary of an easement for ingress, egress, and utilities" over the northernmost 30 feet of the Adams property. CP at 365. Adams now appeals.

ANALYSIS

Adams argues that no easement serving the Deen parcel has ever burdened his land. Deen argues that because "Washington does not allow land to remain unused," the question "is not *whether* Deen has a right to travel over Adams's property, but only which legal or equitable

---

[4] RCW 8.24.030 allows private property owners to condemn land for a private way of necessity in a manner similar to the State's eminent domain power. If a party does condemn land for a private way of necessity, it must compensate the condemnee and, further, RCW 8.24.030 grants trial courts the discretion to award reasonable attorney fees and expert witness costs.

theories provide the basis for Deen's right." Br. of Resp't at 13. We agree with Deen and conclude that an easement implied by prior use serves his land.

STANDARD OF REVIEW

We review a trial court's summary judgments de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

EXPRESS EASEMENT

Adams argues that an express easement appurtenant benefiting Deen's land has never burdened his property because an owner cannot burden his own property with an easement benefiting himself or, in the alternative, that the merger doctrine has extinguished the existence of any such easement. We agree with both contentions.

"An easement is a property right separate from ownership that allows the use of another's land without compensation." *810 Props. v. Jump*, 141 Wn. App. 688, 696, 170 P.3d 1209 (2007). "An express conveyance of an easement, by grant or reservation, must be made by written deed." *Beebe v. Swerda*, 58 Wn. App. 375, 379, 793 P.2d 442 (1990); RCW 64.04.010 ("Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed."). "No particular words are necessary to constitute a grant, and any words which clearly show the intention to give an

easement, *which is by law grantable*, are sufficient to effect that purpose, providing the language is sufficiently definite and certain in its terms." *Beebe*, 58 Wn. App. at 379 (emphasis added).

Easements appurtenant benefit a dominant estate and pass with the land to successors-in-interest. *Heg v. Alldredge*, 157 Wn.2d 154, 161, 137 P.3d 9 (2006). Accordingly, an easement appurtenant "'is not a mere privilege to be enjoyed by the person to whom it is granted or by whom it is reserved. It passes by a deed of such person to his grantee and follows the land without any mention whatever.'" *Winsten v. Prichard*, 23 Wn. App. 428, 431, 597 P.2d 415 (1979) (quoting 2 THOMPSON ON REAL PROP., § 322, at 69 (repl. 1961)).

It has long been a general rule of the common law that "one cannot have an easement in one's own property." *Radovich v. Nuzhat*, 104 Wn. App. 800, 805, 16 P.3d 687 (2001); RESTATEMENT OF THE LAW: PROP. ch. 41, § 497, cmt. a (1944) ("To assume the existence of an easement appurtenant to land there must be presupposed two tracts of land in separate ownerships."). Washington courts have long adhered to this rule. *See, e.g.*, *Coast Storage Co. v. Schwartz*, 55 Wn.2d 848, 853, 351 P.2d 520 (1960) ("One cannot have an easement in his own property.").

Here, although it is clear from the record that the Fialas *intended* on creating an express easement appurtenant benefiting the Deen parcel when they conveyed both parcels to the Pierces, no such easement was ever created: because a landowner cannot burden her own land with an easement benefiting herself, it follows that she cannot grant successive owners-in-interest to the same land an easement that is not, by law, grantable. Accordingly, we conclude that the Fialas

7

(and all succeeding owners holding both parcels in common ownership[5]) never successfully created an express easement appurtenant benefiting the Deen parcel.

Alternatively, even if the Fialas had succeeded in creating an express easement appurtenant in the Pierce deed, the doctrine of merger necessitates a finding that extinguishment of the easement occurred each time a common owner held all legal and equitable rights to both parcels. The doctrine of merger stems from the same common law principle—that one cannot have an easement in one's own property—discussed above. Thus, when "the dominant and servient estates of an easement come into common ownership, the easement is extinguished." *Radovich*, 104 Wn. App. at 805; RESTATEMENT, *supra*, § 497, cm. a (if two separate tracts of land "come into common ownership they cannot continue to be dominant and servient, and the easement appurtenant ceases to exist").

Here, despite frequent changes in ownership between 1989 and 2009, title to both the Adams and Deen parcels remained in common ownership. Accordingly, even had the Fialas or Pierces successfully created an express easement appurtenant, it would have extinguished pursuant to merger long before Deen acquired his parcel from Deutsche Bank.[6]

---

[5] Although the 2009 deed from Deutsche Bank to Deen expressly included the same alleged easement over the northernmost 30 feet of the Adams parcel that appeared in the Fiala-Pierce and Pierce-Reed deeds, Deutsche Bank never owned the Adams parcel. Accordingly, absent the preexistence of an easement appurtenant benefiting the Deen parcel, Deutsche Bank could not *create* an easement over land it did not have any interest in (namely, the Adams parcel).

[6] Deen argues that Division One's *Beebe* decision suggests a different result. In *Beebe*, a property owner conveyed a parcel of land subject to "an easement for road purposes for the use and benefit of the public and for the use and benefit of the property herein conveyed." 58 Wn. App. at 377. Although the *Beebe* court noted that "the necessity for an easement was unclear at the time of the conveyance because the [buyer] would not need an easement over his own property," the decision fails to account for the fact that, unlike in this case, the easement provided public access to *other* properties uninvolved in the immediate transaction between

EASEMENT IMPLIED FROM PRIOR USE

Deen argues that he is entitled to access over the "Adams Property by virtue of an 'easement by implication,' also referred to as an 'implied easement'" or an easement implied from prior use. Br. of Resp't at 34. Because a driveway and utilities have long served the home on the Deen property in continuous fashion, we agree.

"Easements by implication arise where property has been held in a unified title, and during such time an open and notorious servitude has apparently been impressed upon one part of the estate in favor of another part." *Bailey v. Hennessey*, 112 Wash. 45, 48, 191 P. 863 (1920). "The rule, then, is, that upon . . . severance, there arises, by implication of law, a grant of the right to continue such use." *Bailey*, 112 Wash. at 49. "The party seeking to establish an easement implied from prior use generally must establish three key elements: (1) unity of title and subsequent separation by grant of the dominant estate; (2) apparent and continuous use; and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate." *MacMeekin v. Low Income Hous. Inst., Inc.*, 111 Wn. App. 188, 195, 45 P.3d 570 (2002).

Here, the first and third elements are uncontested: both parcels were long held in common ownership before Deen acquired title to the dominant estate and, absent the ability to use the driveway over the Adams parcel, the Deen parcel would become inaccessibly landlocked.

Adams argues that use of the existing driveway has not been continuous because it was not used for a very brief period of time, about five months, after he foreclosed on the property

---

buyer and seller. 58 Wn. App. at 381. In light of this oversight—and the fact that, here, none of the deeds purported to grant public access to the Adams or Deen parcels—we conclude that *Beebe* is distinguishable and do not find the *Beebe* decision's reasoning involving the transformation of easements in gross to appurtenant easements persuasive.

(then owned by Powers) and before Deen moved into the home on the Deen parcel.[7] This

argument lacks merit. For a right-of-way like an easement to be considered abandoned, a brief

period of nonuse is immaterial:

> Generally, abandonment will take place only when the period of nonuse is accompanied by acts that manifest a clear intention to abandon or that destroy the object for which the easement was created or the means of its enjoyment.

1 WASH. REAL PROP. DESKBOOK § 7.8(2)(c) (4th ed. 2009). Without question, Deen has met all

three requirements to establish an easement implied from prior use.

Alternatively, Adams attaches great significance to the types of deeds used in conveying

the properties over the years. He essentially argues that because the deeds from 2003 through

2009 do not *expressly* mention an easement, the parties must have intended to extinguish the

right-of-way over the Adams parcel. But Adams fails to account for the fact that, whether

mentioned in the deeds or not, the common owners of both parcels continuously accessed the

home on the Deen parcel via a driveway over the Adams parcel. When determining whether

intent exists supporting an easement implied by prior use, courts look to the intent of the original

grantor and the use made before severance. *See, e.g., Bushy v. Weldon*, 30 Wn.2d 266, 270-71,

191 P.2d 302 (1948).

Here, the Fialas clearly intended to establish an easement for ingress, egress, and utilities

over the northernmost 30 feet of the Adams parcel to serve the home on the Deen parcel. All

subsequent owners (before Adams) acted in accord with this intent by using the driveway and

---

[7] Adams admitted that to the best of his knowledge, "the path now being used [by Deen as a driveway] is in the same location as the path used prior to the property being vacated by Mr. and Mrs. Powers." CP at 253.

utilities at the home on the Deen parcel. Accordingly, we hold that the Deen parcel is served by an easement implied by prior use burdening the Adams parcel.[8]

SCOPE OF THE EASEMENT

Adams argues that if this court concludes that an easement implied by prior use exists, "it should rule that the easement for ingress and egress is limited to the nine foot width supported by the record." Br. of Appellant at 27. At oral argument before this court, Deen conceded that if we were to conclude that an easement implied by prior use exists (rather than an express easement), remand to the trial court would be appropriate to determine the scope of the easement. Wash. Court of Appeals oral argument, *Adams v. Deen*, No. 43288-9-II (Sept. 12, 2013), at 14 min., 45 sec. (on file with court). We accept that concession.

As explained in *Evich v. Kovacevich*, 33 Wn.2d 151, 159-60, 204 P.2d 839 (1949) (quoting 17 AM. JUR. 997, *Easements*, § 99),

> "As a general rule, an easement implied from an existing use is subject to the conditions and burdens imposed upon it at the time of severance; it can be used only for the purposes of the dominant tenement as existing at that time. The basis of this rule is that a person who does not secure an actual grant for all purposes is not entitled to be put in a better position than to be able to enjoy that which he had at the time the grant was made."

Here, "severance" of the two parcels of land occurred in 2009 at the earliest, when Adams and Deutsche Bank acquired the parcels from Powers. At that time, a driveway and utilities clearly served the Deen parcel. However, we are ill-suited to determine the exact extent

---

[8] Deen argues, alternatively, that he should be granted an easement of necessity. Because we hold that the Deen parcel is served by an easement implied by prior use, we do not address this argument.

and nature of these ingress, egress, and utilities easements.  Remand is appropriate to determine the scope of such easements.[9]

We affirm the trial court's summary dismissal of Adams's trespass and injunction claims, vacate the trial court's order granting an express 30 foot easement, and remand for the trial court to determine the scope of the implied easement for ingress, egress, and utilities serving the Deen parcel.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J.

We concur:

HUNT, J.

BJORGEN, J.

---

[9] Adams also argues that the easement is "subject to being moved by Adams to another location at his request."  Br. of Appellant at 29.  But we have previously rejected this identical argument. *Crisp v. VanLaeken*, 130 Wn. App. 320, 325-26, 122 P.3d 926 (2005); *see also MacMeekin*, 111 Wn. App. at 190 ("We . . . adhere to the traditional rule that easements may not be relocated absent mutual consent of the owners of the dominant and servient estates.").